UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHIRLEY ANN HARRIS, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:17-cv-1348-ACA |
| } | |
| LIBERTY HOME EQUITY } | |
| SOLUIONS, INC., et al., } | |
| } | |
| Defendants. } | |

# MEMORANDUM OPINION

This case is before the court on Defendants Reverse Mortgage Solutions' ("RMS") and Liberty Home Equity Solutions, Inc.'s ("Liberty") motions to dismiss Plaintiff Shirley Ann Harris's third amended complaint. (Docs. 82, 83). The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties have fully briefed the motions. (Docs. 84, 86, 87, 91, 92). For the reasons explained below, the court GRANTS the motions.

## I. STANDARD OF REVIEW

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. A complaint need not contain detailed factual allegations, but a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When resolving a motion to dismiss, the court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 (11th Cir. 2015) (quoting *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam)). Although the court must accept well-pleaded facts as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## II. FACTUAL ALLEGATIONS AND BACKGROUND

On August 18, 2011, Ms. Harris's husband, Samuel T. Harris, obtained a reverse mortgage loan and executed a Fixed Rate Home Equity Conversion

Mortgage. (Doc. 80-1).[1] The mortgage encumbered property located at 898 Dunwoody Lane NW, Birmingham, AL 35215 (the "Property"). (Doc. 80, ¶ 13; Doc. 80-1, p. 2). Mr. Harris is listed as the only borrower on the mortgage. (Doc. 80-1, p. 10). Mr. Harris signed the mortgage. Ms. Harris did not sign the mortgage. (Doc. 80-1, p. 10).

Before Mr. Harris signed the mortgage, Liberty, through its employee or agent Arthur Godfrey, originated relevant loan documents. (Doc. 80, ¶ 12). Mr. Godfrey prepared the loan application, secured credit reports, and assembled a title insurance binder. (Doc. 80, ¶ 14). When Mr. Harris signed the loan application, he told Mr. Godfrey that he was married, but he did not want his wife's name on the paperwork. (Doc. 80, ¶ 19). According to Ms. Harris, Mr. Godfrey was familiar with the Harris family, and he knew or should have known that Ms. Harris was married to Mr. Harris and that she resided with him at the Property. (Doc. 80, ¶¶ 18, 20).

Mr. Godfrey witnessed Mr. Harris indicate that he was single or otherwise unmarried on the loan application. (Doc. 80, ¶ 17). Mr. Godfrey notified other Liberty employees that Mr. Harris was married and that Mr. Harris would not complete the loan transaction unless Liberty did not require his wife's signature on

---

[1] Doc. 80-1 is a copy of the mortgage. Ms. Harris attached the mortgage as an exhibit to her third amended complaint. The court may consider the document without converting the Defendants' motions to dismiss to motions for summary judgment because "[a] copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

3

the documents, including the mortgage. (Doc. 80, ¶ 21). Mr. Godfrey submitted the loan application with knowledge that the application contained misstatements regarding Mr. Harris's marital status. (Doc. 80, ¶ 24). As a result of the loan transaction, Liberty received an origination fee in the amount of $7,581.95. (Doc. 80, ¶ 26).

Mr. Harris passed away on November 10, 2015. (Doc. 80, ¶ 101). On March 25, 2016, RMS obtained the reverse mortgage by assignment. (Doc. 80, ¶ 103). On May 25, 2016, RMS foreclosed on the Property. (Doc. 80, ¶¶ 105-107). After the foreclosure, RMS sent a letter to the Harris's home. The letter notified Mr. Harris that the Property had been foreclosed, and he had 10 days to vacate the premises or face eviction proceedings. (Doc. 80, ¶ 108). Ms. Harris alleges that when she learned about the foreclosure, she did not return to the Property. (Doc. 80, ¶ 109). According to Ms. Harris, RMS foreclosed on a void mortgage and "ousted her from her residence." (Doc. 80, ¶¶ 103-105).

Based on these facts, Ms. Harris filed her complaint asserting negligence and wantonness claims against Liberty and a negligence claim against RMS.

## III. DISCUSSION

Under Alabama law, to state a claim for negligence, a plaintiff must allege facts showing "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Hilyer v. Fortier*, 227 So. 3d 13,

22 (Ala. 2017) (internal quotation marks and citation omitted). To state a claim for wantonness, a plaintiff must allege facts showing that "the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." *Id*. (internal quotation marks and citation omitted). The issue of whether Liberty and/or RMS owed a duty to Ms. Harris is a question of law. *See Rose v. Miller & Co., Inc.*, 432 So. 2d 1237, 1238 (Ala. 1983).

### A. Ms. Harris's Negligence and Wantonness Claims Against Liberty

To support her negligence and wantonness claims against Liberty, Ms. Harris alleges that Liberty owed her three duties. First, Ms. Harris contends that through Mr. Godfrey, Liberty had a duty to comply with Alabama Code § 6-10-3 and obtain her voluntary signature on the loan documents before encumbering the Property. (Doc. 80, ¶ 28). Second, Ms. Harris maintains that Liberty owed her a duty "not to knowingly cause or contribute to cause a lien to be place[d] upon her residence that she occupied as her homestead." (Doc. 80, ¶ 30). Finally, Ms. Harris asserts that Liberty "had a duty to alert Mr. Harris that [Liberty] could not encumber the homestead without his wife's signature." (Doc. 80, ¶ 36). None of these duties gives rise to a cause of action for negligence or wantonness under Alabama law.

5

Ms. Harris first alleges that Liberty had a duty to comply with Alabama Code § 6-10-3. That code section states, in relevant part, that "[n]o mortgage, deed or other conveyance of the homestead by a married person shall be valid without the voluntary signature and assent of the husband or wife. . . ." Ala. Code § 6-10-3. Section 6-10-3 provides the legal effect of a mortgage that is executed without a spouse's voluntary signature (i.e. the mortgage is void). *Lee v. Lee*, 90 So. 2d 775, 777 (Ala. 1956) ("When a married man executes a conveyance of the *homestead* owned by him and occupied by him and his wife, without complying with the requirements of the applicable statute with respect to the signature and acknowledgment of the wife, the conveyance is void.") (emphasis in original). But the plain language of the statute does not create a legal duty on the part of a mortgage originator or another to comply with the statute and ensure the validity of a mortgage by obtaining all required signatures.

Although not specifically stated in the third amended complaint, to the extent that Ms. Harris argues that Article X, § 205 of the Alabama Constitution creates a duty, the court is not persuaded. Article X, § 205 of the Alabama Constitution provides:

> Every homestead not exceeding eighty acres, and the dwelling and appurtenances thereon, to be selected by the owner thereof, and not in any city, town, or village, or in lieu thereof, at the option of the owner, any lot in a city, town, or village, with the dwelling and appurtenances thereon owned and occupied by any resident of this state, and not exceeding the value of two thousand dollars, shall be exempt from

6

sale on execution or any other process from a court; for any debt contracted since the thirteenth day of July, eighteen hundred and sixty-eight, or after the ratification of this Constitution. Such exemption, however, shall not extend to any mortgage lawfully obtained, but such mortgage or other alienation of said homestead by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same.

ALA. CONST. art X, § 205. Courts have recognized that Alabama Code § 6-10-3 is "essentially a codification of Article X, § 205, of the Alabama Constitution." *Gowens v. Goss*, 561 So. 2d 519, 522 (Ala. 1990); *In re Miller*, 352 B.R. 908, 910 (Bankr. M.D. Fla. 2006) ("Section 6-10-3, Code of Alabama, 1975, as amended, is for all intents and purposes a codification of Article X, Section 205, of the Alabama Constitution (1901)."). Accordingly, the court's analysis above with respect to § 6-10-3 applies equally to Article X, § 205, of the Alabama Constitution.

Ms. Harris next alleges that Liberty "owed a duty to Plaintiff not to knowingly cause or contribute to cause a lien to be place[d] upon her residence that she occupied as her homestead." (Doc. 80, ¶ 30). Liberty moved to dismiss this claim arguing no such duty exists at common law. (*See* Doc. 83, pp. 5-6) (citing *Alabama Power Company v. Laney*, 428 So. 2d 21 (Ala. 1983) and *U.S. Bank National Association v. Shepherd*, 202 So. 3d 302 (Ala. 2015)). Plaintiff does not defend her claim against Liberty under a common law duty theory and instead argues that Liberty owed her a duty under two separate statutes. Ms. Harris

7

contends that Alabama Code § 6-10-3 was "designed to protect the Plaintiff" and that "Liberty, through its agent or employee, Arthur Godfrey, Jr., potentially violated 18 U.S.C. § 1014 by knowingly making a false statement or report on a loan application which listed Mr. Samuel Harris as unmarried when both he and Liberty knew [that the information] was false." (Doc. 84, p. 6, ¶¶ 23-24).

Plaintiff's claim fails under § 6-10-3 for the reasons previously set forth. Her claim under 18 U.S.C. § 1014, a federal criminal statute, fails for two independent reasons. First, Ms. Harris may not assert new claims for the first time in response to Liberty's motion to dismiss. *See St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (when evaluating a motion to dismiss, "[t]he scope of the review must be limited to the four corners of the complaint"); *Huls v. Liabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011) (per curiam) (plaintiff did not properly raise claim where plaintiff asserted the claim for the first time in response to the defendant's motion to dismiss). Second, § 1014 does not give rise to a private right of action. *Bass Angler Sportsman Soc. v. U.S. Steel Corp.*, 324 F. Supp. 412, 415 (S.D. Ala. 1971), *aff'd* 447 F.2d 1304 (5th Cir. 1971) ("[C]riminal statutes cannot be enforced by civil actions."); *Milgrom v. Burstein*, 374 F. Supp. 2d 523, 528-29 (E.D. Ky. 2005) ("no cognizable civil action" exists under § 1014).

Finally, Ms. Harris alleges that Liberty owed a duty to Mr. Harris to notify him that Liberty could not encumber the Property without Ms. Harris's signature.

Ms. Harris does not have standing to assert injury to Mr. Harris. *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994) ("[A] litigant must assert his own legal rights and interests."). Thus, to the extent Ms. Harris bases her negligence and wantonness claims against Liberty on a duty that Liberty owed to Mr. Harris, the court does not have subject matter jurisdiction over such claims. *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) ("Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).") (internal quotation marks and citation omitted).

In sum, Ms. Harris has not alleged facts demonstrating that Liberty owed her a duty under the circumstances of this case, and "[w]ithout the existence of a duty, [Ms. Harris's] negligence and wantonness claims fail as a matter of law." *Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1056 (Ala. 2003). Therefore, the court **GRANTS** Liberty's motion to dismiss.

### B. Ms. Harris's Negligence Claim Against RMS

To support her negligence claim against RMS, Ms. Harris alleges that before RMS foreclosed on the Property, RMS had a duty to investigate the marital status of Mr. Harris and determine whether RMS received a valid mortgage lien on the Property. (Doc. 80, ¶¶ 112, 115). Because these facts concern RMS's servicing of the reverse mortgage contract, Ms. Harris has not stated a claim for negligence

against RMS. *See e.g., James v. Nationstar*, LLC, 92 F. Supp. 3d 1190, 1198 (S.D. Ala. 2015) ("[N]o cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law."); *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1290 (N.D. Ala. 2013) ("Alabama law does not recognize a tort-like cause of action for the breach of a duty created by a contract. . . . A negligent failure to perform a contract . . . is but a breach of the contract.") (internal quotation marks, citations, and alteration omitted); *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) ("Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing.").

Ms. Harris argues that the line of cases cited above should not apply because she is not a party to the mortgage contract and because the mortgage is void. Even if Ms. Harris is correct, the court's conclusion remains the same. "[U]nder Alabama law a cause of action for negligent servicing of a mortgage . . . cannot be maintained where the damages are economic." *Webb v. Ocwen Loan Servicing, LLC*, 2012 WL 5906729, at *7 (S.D. Ala. Nov. 26, 2012). Ms. Harris has alleged only economic loss from RMS's alleged breach of the duty of reasonable care. (Doc. 80, ¶ 112; Doc. 80, p. 16). Because a tort claim for breach of this duty must cause personal injury or property damage, Ms. Harris has not stated a plausible negligence claim against RMS. *See Webb*, 2012 WL 5906729, at *7 (granting summary judgment in favor of loan servicer on negligence claim because plaintiff

did not demonstrate personal injury or property damage); *Blake*, 845 F. Supp. 2d at 1210 (dismissing a negligence claim against a loan servicer because an agent to an agreement can "only incur tort liability while servicing a mortgage by causing personal injury or property damage").

In response to RMS's motion to dismiss, Ms. Harris argues that "[t]he duty here is created by statute and the Alabama Constitution." (Doc. 84, p. 3; *see also* Doc. 91, p. 4). The court's analysis above with respect to this same argument against Liberty applies equally to Ms. Harris's negligence claim against RMS. *See supra* pp. 6-7. Also in response to RMS's motion to dismiss, Ms. Harris appears to rely on *Clark v. Indy Mac Mortgage Services*, 2014 WL 122463 (N.D. Ala. Jan. 13, 2014), for the proposition that Alabama Code § 6-10-3 creates a duty to ensure that a spouse voluntarily signs a mortgage. (Doc. 91, pp. 2-4). Ms. Harris's reliance on *Clark* is misplaced.

In *Clark*, the plaintiff filed a declaratory judgment action alleging that a mortgagee wrongfully foreclosed on property in violation of Alabama Code Section 6-10-3. *Clark*, 2014 WL 122463, at *3. In *Clark*, this court (Kallon, J.) recognized the general rule that the plaintiff could "invalidate the foreclosure only if she [could] establish that [her husband] executed a mortgage . . . on Plaintiff's homestead without her consent." *Id.* The court held that the plaintiff failed to make that showing because she conceded that the property in question was not her

11

actual place of residence when her husband executed the mortgage. *Id.* Accordingly, the court granted summary judgment in favor of the mortgagee and dismissed the plaintiff's claim. *Id.* at *4.

*Clark* is not applicable to the facts of this case. Importantly, *Clark* is silent with respect to any duty created by § 6-10-3. Moreover, the plaintiff in *Clark* asserted a declaratory judgment claim based on her allegation that the mortgagee wrongfully foreclosed. Ms. Harris does not assert a wrongful foreclosure claim against RMS. Ms. Harris asserts a negligence claim against RMS. Therefore, *Clark* is not persuasive, and for the reasons explained in detail above, Ms. Harris has not stated a claim for negligence against RMS. Accordingly, the court **GRANTS** RMS's motion to dismiss.

## IV. CONCLUSION

The court **GRANTS** the Defendants' motions to dismiss. The court will enter a separate order dismissing this case with prejudice.

**DONE** and **ORDERED** this August 27, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE